UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

TRAVIS SHINNEMAN
Ambassador Healthcare
705 E. Main Street
Centerville, Indiana 47330

        Plaintiff

v.                                          CASE NO. 1:21-cv-2203

INDIANAPOLIS-MARION COUNTY CITY-COUNTY COUNCIL
200 E. Washington Street
Suite T241
Indianapolis, Indiana 46204

JOE HOGSETT, Mayor
200 E. Washington Street
Suite 2501
Indianapolis, Indiana 46204

VOP OSILI, City-County Council President
200 E. Washington Street
Suite T241
Indianapolis, Indiana 46204

SARITA HUGHES, Clerk of the City-County Council
200 E. Washington Street
Suite T241
Indianapolis, Indiana 46204

THEODORE BRINK
JOSHUA BROWN
BRIAN LINARES
TERRY SMITH
50 N. Alabama Street
Indianapolis, Indiana 46204

MARION COUNTY SHERIFF'S OFFICE
40 S. Alabama Street
Indianapolis, Indiana 46204

KERRY J. FORESTAL, Sheriff
40 S. Alabama Street
Indianapolis, Indiana 46204

1

TANESHA S. CREAR, Deputy Chief
Jail Division Commander
40 S. Alabama Street
Indianapolis, Indiana 46204

Deputy BANKS
Deputy BELLAMY
MATT CUNDIFF
Deputy KUNCLE
Deputy LANE
Deputy MENDELSOHN
STEVE MONDAY
Deputy SCHMIDT
UNKNOWN DEPUTIES
40 S. Alabama Street
Indianapolis, Indiana 46204

WELLPATH
1283 Murfreesboro Road, Suite 500
Nashville, Tennessee 37217

BROOKLYN VISE, LPN
40 S. Alabama Street
Indianapolis, Indiana 46204

Defendants

## COMPLAINT AND REQUEST FOR TRIAL BY JURY

Now into Court comes Plaintiff, Travis Shinneman, through undersigned counsel and

files this Complaint and Request for Trial by Jury against the Defendants, and alleges as follows:

## I.   NATURE OF THE ACTION

Mr. Shinneman brings this action in order to recover damages based upon:

a.   Deprivation of rights protected under 42 U.S.C. §1983, specifically violations of Mr.
Shinneman's rights guaranteed under the Fourth and Eighth Amendments, extended and
guaranteed to him under the Fourteenth Amendment, and supplemental State tort claims.

b.   Mr. Shinneman seeks damages, declaratory judgment, costs and attorney's fees
associated with bringing this suit, as well as punitive damages, incurred as a proximate
result of the Defendants' actions.

2

## II.   SYNOPSIS

Mr. Shinneman's quadriplegia occurred by the actions and/or inactions, of the Indianapolis Metropolitan Police Department, by and through its employees, Theodore Brink, Joshua Brown, Brian Linares, and Terry Smith; along with the Marion County Sheriff's Office and Jail, by and through its employees, Mr. Banks,[1] Mr. Bellamy, Matt Cundiff, Mr. Kuncle, Mr. Lane, Mr. Mendelsohn, Steve Monday, Mr. Schmidt, and other currently unknown deputies for injuries sustained during his arrest, transport, and intake.  Further, Defendant Wellpath, by and through its employee, Brooklyn Vise, for her actions and/or inactions as they relate to her medical assistance.  The violations and injury also arise from the defective policies and/or procedures instituted by the Indianapolis-Marion County City-County Council.

## III.   JURISDICTION AND VENUE

1.   This suit is brought and jurisdiction lies pursuant to 28 U.S.C. §§1331, 1343 and 2201. This suit is a legal action for damages pursuant to 42 U.S.C. §1983 and supplemental State tort claims.

2.   This Court has jurisdiction over the supplemental State claims set out herein pursuant to 28 U.S.C. §1367.

3.   All Defendants reside, may be found, or transact business within the Southern District of Indiana.

4.   This Court has personal jurisdiction over the Defendants who at all times relevant conducted business in Marion County, Indiana.

5.   Venue is appropriate in this Court because of the proximity of this Court to Marion County, Indiana.

---

[1] Defendant Banks, Bellamy, Kuncle, Lane, Mendlesohn and Schmidt's first names are currently unknown.

## IV.   **PARTIES**

6.   Plaintiff, Travis Shinneman, ("Mr. Shinneman"), is a person of the full age of majority and at all times relevant was a resident of Indianapolis, Indiana.

7.   Defendant, Indianapolis-Marion County City-County Council, ("Defendant Council"), is a municipal corporation established to govern the collective local and county governments of Indianapolis and Marion County, Indiana and operates and governs the Indianapolis Metropolitan Police Department pursuant to the laws of Indianapolis and the State of Indiana.  In this case, Defendant Council acted through its agents, employees and servants, including Officers Theodore Brink, Joshua Brown, Brian Linares, and Terry Smith.

8.   Defendant Joe Hogsett, ("Defendant Hogsett") was at all times relevant the elected mayor of Indianapolis, Indiana, and at all times relevant was responsible for the actions of the Indianapolis-Marion County City-County Council.

9.   Defendant Vop Osili, ("Defendant Osili") was at all times relevant an elected council member and council president for the city of Indianapolis, Indiana, and Marion County and at all times relevant was responsible for the actions of the Indianapolis-Marion County City-County Council.

10.   Defendant SaRita Hughes, ("Defendant Hughes") was at all times relevant an elected council member and clerk of the city-county council for the city of Indianapolis, Indiana, and Marion County and at all times relevant was responsible for the actions of the Indianapolis-Marion County City-County Council.

11.   Defendant Theodore Brink, ("Defendant Brink"), was at all times relevant a police officer with the Indianapolis Metropolitan Police Department.

12.     Defendant Joshua Brown, ("Defendant Brown"), was at all times relevant a police officer with the Indianapolis Metropolitan Police Department.

13.     Defendant Brian Linares, ("Defendant Linares"), was at all times relevant a police officer with the Indianapolis Metropolitan Police Department.

14.     Defendant Terry Smith, ("Defendant Smith"), was at all times relevant a police officer with the Indianapolis Metropolitan Police Department.

15.     Defendant, Marion County Sheriff's Office, ("Defendant MCSO"), is a governmental entity of Marion County Indiana and is tasked with transporting arrestees and managing and operating the Marion County Jail located in Indianapolis, Marion County, Indiana.

16.     Defendant Kerry J. Forestal, ("Defendant Forestal"), is the elected Sheriff of Marion County, and at all times relevant was responsible for matters occurring in the transport of arrestees and in the Marion County Jail.

17.     Defendant Tanesha S. Crear, ("Defendant Crear"), is the deputy chief of the Marion County Sheriff's Office and the jail division commander of the Marion County Jail, and at all times relevant was responsible for matters occurring in the Marion County Jail.

18.     Defendant Deputy Banks, ("Defendant Banks"), was at all times relevant a corrections officer in the Marion County Jail.

19.     Defendant Deputy Bellamy, ("Defendant Bellamy"), was at all times relevant a corrections officer in the Marion County Jail.

20.     Defendant Matt Cundiff, ("Defendant Cundiff"), was at all times relevant a corrections officer in the Marion County Jail.

21.     Defendant Deputy Kuncle, ("Defendant Kuncle"), was at all times relevant a corrections officer in the Marion County Jail.

22.     Defendant Deputy Lane, ("Defendant Lane"), was at all times relevant a corrections officer in the Marion County Jail.

23.     Defendant Deputy Mendelsohn, ("Defendant Mendelsohn"), was at all times relevant a corrections officer in the Marion County Jail.

24.     Defendant Steve Monday, ("Defendant Monday"), was at all times relevant a transport officer for the Marion County Sheriff's Office.

25.     Defendant Deputy Schmidt, ("Defendant Schmidt"), was at all times relevant a corrections officer in the Marion County Jail.

26.     Defendant Wellpath, formerly known as Correct Care Solutions ("Defendant Wellpath"), is a Nashville, Tennessee corporation authorized and doing business in Indiana, and particularly providing medical staffing and services at the Marion County Jail in the City of Indianapolis, Marion County, Indiana.

27.     Defendant Brooklyn Vise ("Defendant Vise"), was at all times relevant an employee of Wellpath and worked as a nurse in the Marion County Jail.

## V.  **FACTS**

28.     On September 8, 2019, Indianapolis Metropolitan Police Department ("IMPD") Defendants Brink, Brown, Linares, and Smith arrested Mr. Shinneman.  On September 9, 2019, the Marion County Prosecutor's Office filed Disorderly Conduct charges against Mr. Shinneman in cause number 49G10-1909-CM-035499.

29.     On September 8, 2019, IMPD officers approached Mr. Shinneman at 2720 Southeastern Avenue, in Indianapolis.

30.     According to the Probable Cause Affidavit, Defendant Smith was dispatched at approximately 1430 hours to investigate "a trouble with person."  Defendant Smith was

the first officer to the scene, followed by Defendants Brink and Brown.  The officers observed Mr. Shinneman walking in the street and yelling.  Defendant Linares informed Mr. Shinneman to quiet down.  Defendant Smith informed Mr. Shinneman that he needed to quiet down or he would be arrested for disorderly conduct.  It was suspected that Mr. Shinneman was intoxicated.  Mr. Shinneman continued to yell; as such, he was arrested, and placed in custody, for disorderly conduct and public intoxication.

31.     Mr. Shinneman's hands were cuffed behind his back.  He was told to sit on the ground and wait for transport.

32.     In accordance with IMPD policy, all arrestees are to be transported by Defendant MCSO in jail wagons.  As such, the IMPD officers called MCSO to transport Mr. Shinneman to the Marion County Jail.

33.     According to official records obtained from the MSCO Internal Affairs Department ("MCSO IAD") at 1501 hours, MCSO Deputy Defendant Monday arrived at 2720 Southeastern Avenue to transport Mr. Shinneman to the jail.  According to Defendant Monday's statement to the MCSO IAD, Mr. Shinneman walked "approximately 25 to 30 feet" to the transportation wagon with "minimal to no assistance from IMPD Officers." IMPD officers informed Defendant Monday that Mr. Shinneman was intoxicated.  At that time, Defendant Monday placed his cuffs on Mr. Shinneman and returned the IMPD's cuffs to the arresting officers.  Upon information and belief, his ankles were cuffed as well.

34.     Defendant Monday told Mr. Shinneman to "step into the back of the wagon."  The MCSO IAD report stated that Mr. Shinneman turned around and tried to sit down on the wagon floorboard.  Defendant Brown heard Mr. Shinneman state, "I'm trying."  Mr.

Shinneman was told that if he did not get into the wagon, he would be charged with resisting law enforcement.

35.    While still handcuffed, upon information and belief, Mr. Shinneman was grabbed on either side by at least two (2) individual officers/deputy and tossed into the jail transport wagon, head first.

36.    Defendant Brown commented to the MCSO IAD that he witnessed Defendant Monday "nudge" and "push" Mr. Shinneman to force him into the jail wagon.   Defendant Brown stated that he last saw Mr. Shinneman sitting on the floorboard of the jail wagon "facing forward."

37.    Defendant Brink informed the MCSO IAD that he saw Defendant Monday "push[ Mr. Shinneman] into the wagon belly down and slide[] him in."  He further commented that Mr. Shinneman was sitting on the floorboard facing forward when the wagon doors were closed.

38.    Defendant Brink was also interviewed by Commander Ronald Hicks with IMPD Operations Division, the summary of that conversation was included in the MCSO IAD report.  In that summary, Defendant Brink commented that "the wagon driver [Defendant Monday] was clearly getting frustrated and agitated with Shinneman."  Defendant Brink stated that Defendant Monday "sat [Mr. Shinneman] up on the bench (seat)."  Defendant Brink mentioned to IMPD Operations Division that when he last saw Mr. Shinneman, he "appeared to be fine and never said anything about being injured in any way … Shinneman's legs appeared to work fine both before and after he was placed in the wagon."  Commander Hicks commented that "[w]hen the wagon left the scene

Shinneman appeared fine and our officers were surprised to later learn there was an issue."

39. Defendant Monday commented to the MCSO IAD that he was aware that Mr. Shinneman was highly intoxicated, so much so that he noted that he was concerned about potential affixation and/or choking hazards.

40. While in the jail wagon and throughout transport, Mr. Shinneman remained cuffed behind his back. Mr. Shinneman was not secured in the jail wagon with a seat/safety belt nor any restraint that would prevent him from being tossed about during transport. Mr. Shinneman was either seated on the floorboard facing forward or on the bench. No safety belt restraints were employed.

41. Mr. Shinneman was the only person inside the back of the jail wagon. Mr. Shinneman was transported to the Marion County Jail by Defendant Monday.

42. During transport to the jail, as stated by Defendant Monday to the MSCO IAD, he "called intake and advised them that [he] had a resister and [] would need assistance getting him out of the wagon."

43. Upon arrival at the Marion County Jail, Defendant Monday opened the tail gate doors to the jail wagon, to discover Mr. Shinneman lying face down with his head at the back of the wagon his hands cuffed behind his back.

44. Defendants Monday and Banks "pulled Mr. Shinneman from [the] wagon and attempted to stand him up." According to Defendant Monday's statement to the MSCO IAD, Mr. Shinneman "refused to comply, so [Defendant Monday], Deputy Banks, Deputy Kuncle, and Deputy Schmidt picked him up and carried him to the door leading to the inside of

receiving.  Once inside, Mr. Shinneman refused to stand up and was layed (sic) down on the floor."

45.     Eventually, a wheelchair was brought to receiving to wheel Mr. Shinneman to intake and processing.

46.     Videos obtained from the MCSO IAD, evidence that Mr. Shinneman was wheeled into the Intake Property Counter area.  His hands were cuffed behind his back.  The video shows a deputy apply an additional set of handcuffs to Mr. Shinneman's right arm.  That set of handcuffs was used by the deputy to anchor Mr. Shinneman to the wheelchair and assist the deputy in lifting Mr. Shinneman against the wall so that deputies could pat him down.

47.     The videos show a deputy grabbed Mr. Shinneman by the nape of his neck to sit him up in the wheelchair.  Other deputies began to hoist Mr. Shinneman against the wall to pat him down.

48.     Defendant Monday stated to the MCSO IAD that he witnessed the deputies processing Mr. Shinneman, and commented "[w]hile inside I observed the deputies holding him up against the wall as if he was resisting them as well."

49.     The videos evidence that Mr. Shinneman was physically unable to stand on his own, and while the deputies were pushing him up against the wall, his legs were dangling under his body.

50.     During the pat-down, Defendant Brooklyn Vise (nurse) entered the Intake Property Counter area.  The video does not depict Defendant Vise assess or even interact with Mr. Shinneman.

51.   After the pat-down, Mr. Shinneman was released by the deputies and crumbled to the ground.  All deputies' actions were witnessed by Defendant Vise.  Without assessing Mr. Shinneman, Defendant Vise refused to accept him at the jail citing that he was too intoxicated.

52.   The deputies were unable to pick Mr. Shinneman up off the floor and put him back into the wheelchair.  From the ground, four (4) deputies each grabbed one of Mr. Shinneman's limbs and carried him out of the intake area, stomach down.  Upon information and belief, Mr. Shinneman was placed on the ground in the search room.

53.   Ambulance transport was requested and Mr. Shinneman was taken to Eskenazi Hospital.

54.   Eskenazi Hospital diagnosed Mr. Shinneman as a quadriplegic.  Surgery was required to fuse his spine from C-2 to T-2.

55.   On October 1, 2020, the State of Indiana dismissed the Disorderly Conduct charges against Mr. Shinneman that were filed in cause number 49G10-1909-CM-035499.

56.   In April 2015, Mr. Freddie Gray died from injuries sustained while being transported in a Baltimore Police Department transport van.  He was unsecured in said van and suffered a broken neck from being thrown within the transport van.  As a result, the United States Department of Justice ("DOJ") investigated police procedures.

57.   On January 12, 2017, the DOJ entered into a Consent Decree to ensure that the City of Baltimore and the Baltimore Police Department "protect individuals' statutory and constitutional rights, treat individuals with dignity and respect, and promote public safety in a manner that is fiscally responsible and responsive to community priorities."

58.   From that point forward, upon information and belief, for the safe and effective transportation of detainees it became best practices when in the process of taking a person

into custody, law enforcement conduct themselves in a manner that protects the wellbeing and personal security of officers, the public, and the people being transported.

59.   The Baltimore Consent Decree established that transport vans were required to "contain sufficient and functioning seatbelts for each person in custody they are intended to transport.  In addition to a seatbelt, [Baltimore Police Department] will ensure that all transport vans or wagons are outfitted with a strap located along the rear area of each seat that persons being transported may grip for security during transport."

60.   The Consent Decree also required that "all transport wagons or vans that are used during prisoner transport are equipped with a functioning transport vehicle camera ("TVC") system, which includes video recording equipment within all compartments used for the transportation of persons in custody."

61.   Upon information and belief, the policies set out in paragraphs 57-60 above, established best practices for any law enforcement entity as it relates to the safe and effective transport of arrestees.

62.   On September 8, 2019, IMPD officers were not equipped with body cameras, neither were their police units equipped with dash cameras.

63.   On September 8, 2019, the City of Indianapolis did not have pole cameras in the area of 2720 Southeastern Avenue, in Indianapolis.

64.   On September 8, 2019, MCSO deputies were not equipped with body cameras, neither were their transport vans equipped with dash cameras or vehicle cameras within the compartments used to transport person in custody.  Further, on September 8, 2019, MCSO transport vans were not equipped with safety belts.

## VI.   <u>CAUSES OF ACTION</u>

**Causes of Action I through V
Violations of 42 U.S.C. §1983**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 64 of this Complaint, as if those statements were fully articulated within this cause of action.

65.   Pursuant to 42 U.S.C. §1983, persons deprived of federal constitutional rights may bring a private action for damages against individual officers and units of local government.

66.   In order to prove a claim under 42 U.S.C. §1983, a plaintiff must demonstrate that

a.   the defendant deprived him of a right secured by the Constitution or any law of the United States, and

b.   the deprivation of that right resulted from the defendant acting under color of law.

67.   At all times relevant to this action, all Defendants to this claim were acting under the color of law under their authority, and under color of the statutes, ordinances, regulations, policies, customs, and their acts and/or omissions were conducted within the scope of their official duties or employment.

68.   Mr. Shinneman had the following clearly established rights at the time of the complained of conduct:

a.   the right to be secure in his person from unreasonable seizure through excessive force, under the Fourth and Fourteenth Amendments, and

b.   the right to bodily integrity and to be free from cruel and unusual punishment and excessive force by law enforcement under the Eighth and Fourteenth Amendments.

69.   Any reasonable law enforcement officer or unit of local government knew or should have known of these rights at the time of the complained of conduct as they were clearly established.

70.     Defendants are not entitled to qualified immunity for the complained of conduct.

**Cause of Action I**
**Violations of 42 U.S.C. §1983**
**As to Defendants Council,**
**Hogsett, Osili, and Hughes**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements

contained in paragraphs 1 through 70 of this Complaint, as if those statements were fully

articulated within this cause of action.

71.     At the time of the complained conduct, Defendants Council, Hogsett, Osili, and Hughes

knew or should have known of the rights set forth in paragraph 68 above, as they were

clearly established.

72.     Defendants Council, Hogsett, Osili, and Hughes were, at all times relevant, policymakers

for the Indianapolis Metropolitan Police Department, and in that capacity established

policies, procedures, customs, and/or practices for the IMPD.

73.     Defendants Council, Hogsett, Osili, and Hughes developed and/or maintained policies,

procedures, customs, and/or practices exhibiting deliberate indifference to the

constitutional rights of citizens, which were moving forces behind and proximately

caused the violations of Mr. Shinneman's constitutional and federal rights as set forth

herein.  These violations resulted from a conscious and/or deliberate choice to follow a

course of action from among various available alternatives.

74.     Defendants Council, Hogsett, Osili, and Hughes created and/or tolerated an atmosphere

of lawlessness, and developed and maintained longstanding, department-wide customs,

law enforcement related policies, procedures, practices, and/or failed to properly train

and/or supervise its officers in a manner amounting to deliberate indifference to the

constitutional rights of Mr. Shinneman and of the public.

75.   Defendants Council, Hogsett, Osili, and Hughes are properly sued directly under 42 U.S.C. §1983 for their own and their deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training and/or derelict supervision, ratification, acquiescence and/or intentional failures which result in injuries to arrestees and particularly to Mr. Shinneman.

76.   Defendants Council, Hogsett, Osili, and Hughes are properly sued directly under 42 U.S.C. §1983 due to their actions and/or inactions, acting in their official capacities, which violated Mr. Shinneman's Fourth, Eighth, and Fourteenth Amendment rights to be free from unreasonable seizure through excessive force and cruel and unusual punishment by law enforcement by its deliberate indifference to arrestees/detainees' rights.

77.   Defendants Council, Hogsett, Osili, and Hughes are deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures as to the arrest and transport of an individual in the care, custody and control of IMPD.

78.   Defendants Council, Hogsett, Osili, and Hughes violated Mr. Shinneman's rights by their failure and/or refusal to promulgate, implement, maintain and/or enforce sufficient best practice policies, procedures and/or specifically training IMPD officers to identify when an emergency transport is necessary to preserve the life, health and safety of a person in the care, custody and control of IMPD.

79.   Defendants Council, Hogsett, Osili, and Hughes are deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their promulgation, training, implementation, enforcement, and/or supervision of policies and procedures specifically

requiring that all arrestees are transported by the Marion County Sheriff's Office ("MCSO") in jail wagons.

80.   In their official capacity, Defendants Council, Hogsett, Osili, and Hughes provided deliberately indifferent training and/or policy to Defendants Brink, Brown, Linares, and Smith.  They further provided deliberately indifferent supervision and/or discipline, and they were deliberately indifferent in failing to adopt best practice policies and/or procedures necessary to prevent constitutional violations of Mr. Shinneman's rights. Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Shinneman at the hands of Defendants Brink, Brown, Linares, and Smith.

81.   The acts and/or omissions of Defendants Council, Hogsett, Osili, and Hughes, as described herein, intentionally deprived Mr. Shinneman of his constitutional and statutory rights and caused him other damages.

82.   As a direct result of Defendants Council, Hogsett, Osili, and Hughes' unlawful conduct, Mr. Shinneman has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages.  As a further result of these Defendants' unlawful conduct, Mr. Shinneman has incurred special damages, including medical expenses and will continue to incur further medical expenses and other special damages related expenses.

83.   Mr. Shinneman has, and will continue to suffer in the future, lost earnings and impaired earnings capacity.  Mr. Shinneman is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

84.    In addition to compensatory, economic, consequential and special damages, Mr. Shinneman is entitled to punitive damages against each of the individually named Defendants pursuant to 42 U.S.C. § 1983.

**Cause of Action II**
**Violations of 42 U.S.C. §1983**
**As to Defendants Brink, Brown, Linares, and Smith**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 84 of this Complaint, as if those statements were fully articulated within this cause of action.

85.    At the time of the complained conduct, Defendants Brink, Brown, Linares, and Smith knew or should have known of the rights set forth in paragraph 68 above, as they were clearly established.

86.    Defendants Brink, Brown, Linares, and Smith acted with deliberate indifference to Mr. Shinneman's constitutional rights.

87.    Defendants Brink, Brown, Linares, and Smith were deliberately indifferent to Mr. Shinneman's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent by their failure to follow best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in the care, custody and control of IMPD.

88.    Defendants Brink, Brown, Linares, and Smith were deliberately indifferent to Mr. Shinneman's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent by their failure to follow

best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD as to the arrest and transport of an individual.

89.   Defendants Brink, Brown, Linares, and Smith were deliberately indifferent to Mr. Shinneman's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent by their failure to follow best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD as they relate to identifying when an emergency transport is necessary to preserve the life, health and safety of a person in their custody and control.

90.   Defendants Brink, Brown, Linares, and Smith's actions and/or inactions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated Mr. Shinneman's constitutional rights.  Specifically, but not exclusively, after recognizing that Mr. Shinneman was in a highly intoxicated state, Defendants failed and/or refused to contact EMS to take him to the hospital, they failed and/or refused to insist on him being secured in the transport van, and once they realized Mr. Shinneman was not going to be secured in the transport van, they failed and/or refused to transport him in their police cruisers to the jail.

91.   Defendants Brink, Brown, Linares, and Smith engaged in shocking actions and/or inactions, as described herein, which were willfully malicious and/or reckless, and deliberately indifferent to Mr. Shinneman's federally protected constitutional rights.

92.   As a proximate result of Defendants Brink, Brown, Linares, and Smith's unlawful conduct, Mr. Shinneman has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory, special and punitive damages.

93.    As a further result of Defendants Brink, Brown, Linares, and Smith's unlawful conduct, Mr. Shinneman has incurred special damages, including medically related expenses and will continue to incur further medically and other special damages related expenses.  Mr. Shinneman is therefore entitled to money damages pursuant to 42 U.S.C. §1983 to compensate him for his injuries and for the violations of his Constitutional and civil rights.

94.    Mr. Shinneman has, and will continue to suffer in the future, lost earnings and impaired earnings capacity.  Mr. Shinneman is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

95.    In addition to compensatory, economic, consequential, and special damages, Mr. Shinneman is entitled to punitive damages against each of the individually named Defendants under 42 U.S.C. § 1983, in that the actions of Defendants Brink, Brown, Linares, and Smith were taken maliciously, willfully and/or with a reckless or wantonly deliberate indifferent regard to Mr. Shinneman's constitutional rights.

**Cause of Action III**
**Violations of 42 U.S.C. §1983**
**As to Defendants MCSO, Forestal and Crear**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 95 of this Complaint, as if those statements were fully articulated within this cause of action.

96.    At the time of the complained conduct, Defendants MCSO, Forestal, and Crear knew or should have known of the rights set forth in paragraph 68 above, as they were clearly established.

97.     At all times relevant, Defendant MCSO was responsible for transporting arrestees to the Marion County Jail.  Defendant MCSO, as custodian of arrestee/detainees is also responsible for the operation and management of the Marion County Jail and to ensure the safety and care of the detainees in their care, custody and control.

98.     Defendants Forestal and Crear were, at all times relevant, policymakers for the Marion County Sheriff's Department, and in that capacity established policies, procedures, customs, and/or practices for the Marion County Sheriff's Office and the Marion County Jail.

99.     Defendant Forestal, is the elected Sheriff of Marion County and properly sued directly under 42 U.S.C. §1983 for his own deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training and/or derelict supervision, ratification, acquiescence and/or intentional failures which were moving forces in and directly resulted in the complained of constitutional and statutory violations and resulting injuries.

100.    Defendant Crear, is the Deputy Chief of the Marion County Sheriff's Department and the jail division commander of the Marion County Jail and is properly sued directly under 42 U.S.C. §1983 for her own deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training and/or derelict supervision, ratification, acquiescence and intentional failures which were moving forces in and directly resulted in the complained of constitutional and statutory violations and resulting injuries.

101.    Defendants MCSO, Forestal, and Crear developed and/or maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately

caused the violations of Mr. Shinneman's constitutional and federal rights as set forth herein.  These violations resulted from a conscious and/or deliberate choice to follow a course of action from among various available alternatives.

102.   Defendants MCSO, Forestal, and Crear created and/or tolerated an atmosphere of lawlessness, and developed and maintained longstanding, department-wide customs, law enforcement related policies, procedures, practices, and/or failed to properly train and/or supervise its deputies in a manner amounting to deliberate indifference to the constitutional rights of Mr. Shinneman and of the public.

103.   Defendants MCSO, Forestal, and Crear are properly sued directly under 42 U.S.C. §1983 for their deliberately indifferent unconstitutional decisions, policies, practices, habits, customs, usages, training and/or derelict supervision, ratification, acquiescence and/or intentional failures which result in injuries to arrestees and particularly to Mr. Shinneman.

104.   Defendants MCSO, Forestal, and Crear are properly sued directly under 42 U.S.C. §1983 due to their actions and/or inactions, acting in their official capacities, which violated Mr. Shinneman's Fourth, Eighth, and Fourteenth Amendment rights to be free from unreasonable seizure through excessive force and cruel and unusual punishment by law enforcement by its deliberate indifference to arrestees/detainees' rights.

105.   Defendants MCSO, Forestal, and Crear were deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a

person and the use of force when engaging with arrestees/detainees in the care, custody and control of MCSO.

106. Defendants MCSO, Forestal, and Crear were deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure and/or refusal to promulgate, maintain, train, implement, enforce, and/or supervise best practice policies and procedures specifically training MCSO deputies to identify when an emergency transport is necessary to preserve the life, health and safety of a person in the care, custody and control of MCSO.

107. Defendants MCSO, Forestal, and Crear were deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures, including but not limited to, dealing with the securing of individuals being transported to the Marion County Jail by sheriff deputies utilizing MCSO jail wagons.

108. Defendants MCSO, Forestal, and Crear were deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee in their care, custody and control.

109. Defendants MCSO, Forestal, and Crear were deliberately indifferent to arrestees' civil rights and particularly Mr. Shinneman's rights by their failure to promulgate, train, implement, enforce, and/or supervise best practice policies and procedures as to the

manner by which jail personnel are to provide medical care to individuals in their care, custody and control.

110.   In their official capacity Defendants Forestal and Crear provided deliberately indifferent training and/or policy to Defendants Banks, Bellamy, Cundiff, Kuncle, Lane, Mendelsohn, Monday, Schmidt, and Vise.  They further provided deliberately indifferent supervision and/or discipline, and they were deliberately indifferent in failing to adopt best practice policies and procedures necessary to prevent constitutional violations of Mr. Shinneman's rights.  Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Shinneman at the hands of Defendants Banks, Bellamy, Cundiff, Kuncle, Lane, Mendelsohn, Monday, Schmidt, and Vise.

111.   The acts and/or omissions of Defendants MCSO, Forestal, and Crear, as described herein, intentionally deprived the Mr. Shinneman of his constitutional and statutory rights and caused him other damages.

112.   As a direct result of Defendants MCSO, Forestal, and Crear's unlawful conduct, Mr. Shinneman has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory and special damages.  As a further result of these Defendants' unlawful conduct, Mr. Shinneman has incurred special damages, including medical expenses and will continue to incur further medical expenses and other special damages related expenses.

113.   Mr. Shinneman has, and will continue to suffer in the future, lost earnings and impaired earnings capacity.  Mr. Shinneman is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law. There may also be special damages for lien interests.

114.    In addition to compensatory, economic, consequential and special damages, Mr.

Shinneman is entitled to punitive damages against each of the individually named

Defendants pursuant to 42 U.S.C. § 1983.

**Cause of Action IV**
**Violations of 42 U.S.C. §1983**
**As to Defendant Wellpath**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements

contained in paragraphs 1 through 114 of this Complaint, as if those statements were fully

articulated within this cause of action.

115.    At the time of the complained conduct, Defendant Wellpath knew or should have known

of the rights set forth in paragraph 68 above, as they were clearly established.

116.    At all times relevant, Defendant Wellpath was contracted to provide medical services at

the Marion County Jail which qualified it as a quasi-government entity for the purpose of

determining it was capable of violating Mr. Shinneman's rights protected under 42

U.S.C. §1983.

117.    Defendant Wellpath violated Mr. Shinneman's rights under the Fourth, Eighth and

Fourteenth Amendments to be free from cruel and unusual punishment by failing to

properly train and/or have best practice policies in place for the direction of its employees

in their duties to recognize when a serious medical emergency presents.

118.    Defendant Wellpath violated Mr. Shinneman's rights under the Fourth, Eighth and

Fourteenth Amendments by its deliberate indifference to Mr. Shinneman's serious

medical trauma by its failure and/or refusal to properly train and/or have best practice

policies in place for the direction of its employees in their duties causing Mr. Shinneman

to unreasonably and needlessly suffer.

24

119.     Defendant Wellpath provided deliberately indifferent training and/or policy to Defendant
         Vise.  It further provided deliberately indifferent supervision and/or discipline, and it was
         deliberately indifferent in failing to adopt best practice policies and/or procedures
         necessary to prevent constitutional violations of Mr. Shinneman's rights.  Its actions
         and/or inactions were a moving force in and had a direct causal link to the injuries
         sustained by Mr. Shinneman at the hands of Defendant Vise.

**Cause of Action V**
**Violations of 42 U.S.C. §1983**
**As to Defendants Banks, Bellamy, Cundiff,**
**Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise**

         Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements
contained in paragraphs 1 through 119 of this Complaint, as if those statements were fully
articulated within this cause of action.

120.     At the time of the complained conduct, Defendants Banks, Bellamy, Cundiff, Knucle,
         Lane, Mendelsohn, Monday, Schmidt, and Vise knew or should have known of the rights
         set forth in paragraph 68 above, as they were clearly established.

121.     Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and
         Vise acted with deliberate indifference to Mr. Shinneman's constitutional rights.

122.     Defendant Vise' status as an employee of Defendant Wellpath, working at the jail,
         qualified her as a quasi-government employee for the purpose of determining that she
         was acting under color of law and capable of violating Mr. Shinneman's rights protected
         under 42 U.S.C. §1983.

123.     Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and
         Vise were deliberately indifferent to Mr. Shinneman's civil rights by their following of
         policies and/or procedures that were not best practices, or in the alternative, were

deliberately indifferent by their failure to follow best practice policies and/or procedures promulgated and implemented by MCSO specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in their care, custody and control.

124.  Defendant Monday was deliberately indifferent to Mr. Shinneman's civil rights by his following of policies and/or procedures that were not best practices, or in the alternative, was deliberately indifferent by his failure to follow best practice policies and/or procedures promulgated and implemented by MCSO as to the arrest and transport of an individual.

125.  Defendant Monday was deliberately indifferent to Mr. Shinneman's civil rights by his following of policies and/or procedures that were not best practices, or in the alternative, was deliberately indifferent by his failure to follow best practice policies and/or procedures promulgated and implemented by MCSO as they relate to identifying when an emergency transport is necessary to preserve the life, health and safety of a person in their custody and control.

126.  Defendant Monday was deliberately indifferent to Mr. Shinneman's civil rights by his following of policies and/or procedures that were not best practices, or in the alternative, was deliberately indifferent by his failure to follow best practice policies and/or procedures promulgated and implemented by MCSO as to the transport of an individual, including but not limited to, dealing with the securing of individuals being transported to the Marion County Jail utilizing MCSO jail wagons.

127.  Taking Defendant Monday's actions and/or inactions in light of the facts and circumstances confronting him, Defendant Monday was objectively unreasonable and

deliberately indifferent to the rights of Mr. Shinneman.  As evidenced by statements of Defendant Monday and of those interviewed by MCSO IAD, specifically, but not exclusively:

    a.   Defendant Monday was "frustrated and agitated with Shinneman" (¶ 38);

    b.   Defendant Monday "nudged" and "pushed" Mr. Shinneman into the jail wagon (¶s 36 & 37);

    c.   After recognizing that Mr. Shinneman was in a highly intoxicated state, Defendant Monday failed and/or refused to contact EMS to take him to the hospital, (¶ 39);

    d.   Defendant Monday failed and/or refused to secure Mr. Shinneman in the transport van by having him sit on the floorboard of the wagon (¶s 36 & 37); and

    e.   Defendant Monday gave Shinneman a "rough ride" when he "called intake and advised them that [he] had a resister and [] would need assistance getting him out of the wagon." (¶ 42).

128.   Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise were deliberately indifferent to Mr. Shinneman's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent to Mr. Shinneman's civil rights by their failure follow best practice policies and procedures promulgated and implemented by the MCSO regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee.

129.   Defendant Vise was deliberately indifferent to Mr. Shinneman's civil rights for her failure to provide timely and adequate health care to Mr. Shinneman for an evident serious medical condition.

130.   Currently unknown MCSO deputies were deliberately indifferent to Mr. Shinneman's civil rights by their following of policies and/or procedures that were not best practices, or in the alternative, were deliberately indifferent to Mr. Shinneman's civil rights by their failure to follow best practice policies and/or procedures promulgated and implemented

by the MCSO regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee.

131.    Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise engaged in shocking actions and/or inactions, as described herein, which were willfully malicious and/or reckless, and deliberately indifferent to Mr. Shinneman's federally protected constitutional rights.

132.    As a proximate result of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise's unlawful conduct, Mr. Shinneman has suffered actual physical and emotional injuries, and other damages and losses as described herein entitling him to compensatory, special and punitive damages.

133.    As a further result of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise's unlawful conduct, Mr. Shinneman has incurred special damages, including medically related expenses and will continue to incur further medically and other special damages related expenses.  Mr. Shinneman is therefore entitled to money damages pursuant to 42 U.S.C. §1983 to compensate him for his injuries and for the violations of his Constitutional and civil rights.

134.    Mr. Shinneman has, and will continue to suffer in the future, lost earnings and impaired earnings capacity.  Mr. Shinneman is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. §1988, pre-judgment interest and costs as allowable by federal law.  There may also be special damages for lien interests.

135.    In addition to compensatory, economic, consequential and special damages, Mr. Shinneman is entitled to punitive damages against each of the individually named

Defendants under 42 U.S.C. § 1983, in that the actions of each of these individual Defendants have been taken maliciously, willfully or with a reckless or wanton disregard of Mr. Shinneman's constitutional rights.

### Cause of Action VI through X
### Negligence

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 135 of this Complaint, as if those statements were fully articulated within this cause of action.

136. The elements of a negligence cause of action consist of:

      a.  a duty owed to the plaintiff,
      b.  a breach of that duty by the defendant,
      c.  which proximately causes,
      d.  plaintiff's damages.

137. A duty exists for a law enforcement officer, a custodian of arrestees and/or detainees and a unit of government to exercise reasonable care to preserve the life, health, and safety of the person in custody.

138. As set forth below, the Defendants' breached their duty to Mr. Shinneman proximately causing his damages.

139. At all times relevant to this action, all Defendants to this claim were acting under the color of law under their authority, and under color of the statutes, ordinances, regulations, policies, customs, and their acts and/or omissions were conducted within the scope of their official duties or employment.

140. At the time of the complained conduct, Defendant Council was under a duty to properly train, supervise, investigate and correct improper actions of IMPD officers.

141.   At the time of the complained conduct, Defendant MCSO was under a duty to properly train, supervise, investigate and correct improper actions of MCSO deputies.

142.   At the time of the complained conduct, Defendant Wellpath was under a duty to properly train, supervise, investigate and correct improper actions of its employees.

143.   Any reasonable law enforcement officer or unit of government knew or should have known the obligations set forth in the forgoing paragraphs, as they were clearly established.

144.   Defendants are not entitled to qualified immunity for the complained conduct.

**Cause of Action VI**
**Negligence**
**As to Defendants Council,**
**Hogsett, Osili, and Hughes**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 144 of this Complaint, as if those statements were fully articulated within this cause of action.

145.   Defendants Council, Hogsett, Osili, and Hughes, acting in their official capacities, are negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures in the use of force when engaging with arrestees, and particularly Mr. Shinneman, in the care, custody and control of the IMPD.

146.   Defendants Council, Hogsett, Osili, and Hughes, acting in their official capacities, are negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures specifically requiring that all arrestees are transported by the MCSO in jail wagons.

147.   Defendants Council, Hogsett, Osili, and Hughes, acting in their official capacities, are negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in the care, custody and control of IMPD.

148.   In their official capacity, Defendants Council, Hogsett, Osili, and Hughes provided negligent training and/or policy to Defendants Brink, Brown, Linares, and Smith.  They further provided negligent supervision and/or discipline, and they were negligent in failing to adopt best practice policies and/or procedures necessary to prevent harm to Mr. Shinneman and the public.  Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Shinneman at the hands of Defendants Brink, Brown, Linares, and Smith.

149.   As a direct and proximate result of Defendants Council, Hogsett, Osili, and Hughes's negligence, Mr. Shinneman suffered serious actual physical and emotional injuries, suffered and will continue to suffer from pain, mental anguish and distress, and was caused economic damages, including but not limited to expenses for hospital and other medical care, as well as expenses for future medical care.

**Cause of Action VII**
**Negligence**
**As to Defendants Brink, Brown, Linares, and Smith**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 149 of this Complaint, as if those statements were fully articulated within this cause of action.

150.   Defendants Brink, Brown, Linares, and Smith were negligent by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure to follow best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of a person in the care, custody and control of IMPD.

151.   Defendants Brink, Brown, Linares, and Smith were negligent by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure to follow best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD as to the arrest and transport of an individual.

152.   Defendants Brink, Brown, Linares, and Smith were negligent by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure to follow best practice policies and/or procedures promulgated by Defendant Council and implemented by IMPD as they relate to identifying when an emergency transport is necessary to preserve the life, health and safety of a person in their custody and control.

153.   Defendants Brink, Brown, Linares, and Smith's actions and/or inactions, as described herein, were negligent in light of the facts and circumstances confronting them. Specifically, but not exclusively, after recognizing that Mr. Shinneman was in a highly intoxicated state, Defendants failed and/or refused to contact EMS to take him to the hospital, they failed and/or refused to insist on him being secured in the transport van, and once they realized Mr. Shinneman was not going to be secured in the transport van,

they failed and/or refused to transport him in their police cruisers to the jail.

154.     As a direct and proximate result of Defendants Brink, Brown, Linares, and Smith's
negligence, Mr. Shinneman suffered serious actual physical and emotional injuries,
suffered and will continue to suffer from pain, mental anguish and distress, and was
caused economic damages, including but not limited to expenses for hospital and other
medical care, as well as expenses for future medical care.

**Cause of Action VIII**
**Negligence**
**As to Defendants MCSO, Forestal and Crear**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements
contained in paragraphs 1 through 154 of this Complaint, as if those statements were fully
articulated within this cause of action.

155.     Defendants MCSO, Forestal and Crear, acting in their official capacities, are negligent in
their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce
sufficient best practice policies and/or procedures in the use of force when engaging with
detainees, and particularly Mr. Shinneman, in the care, custody and control of the Marion
County Jail.

156.     Defendants MCSO, Forestal and Crear, acting in their official capacities, are negligent in
their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce
sufficient best practice policies and/or procedures, including but not limited to, dealing
with the securing of individuals being transported to the Marion County Jail by sheriff
deputies utilizing MCSO jail wagons.

157.     Defendants MCSO, Forestal and Crear, acting in their official capacities, are negligent in
their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce

sufficient best practice policies and/or procedures specifically training MCSO deputies to identify when an emergency transport is necessary to preserve the life, health and safety of a person in their custody and control.

158.   Defendants MCSO, Forestal and Crear, acting in their official capacities, are negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee in their care, custody and control.

159.   Defendants MCSO, Forestal and Crear, acting in their official capacities, are negligent in their failure to promulgate, train, implement, enforce, supervise, maintain and/or enforce sufficient best practice policies and/or procedures as to the manner by which jail personnel are to provide medical care to individuals in their care, custody and control.

160.   In their official capacity, Defendants Forestal and Crear provided negligent training and/or policy to Defendants Banks, Bellamy, Cundiff, Kuncle, Lane, Mendelsohn, Monday, Schmidt, and Vise.  They further provided negligent supervision and/or discipline, and they were negligent in failing to adopt best practice policies and/or procedures necessary to prevent harm to arrestees/detainees, particularly Mr. Shinneman and other individuals.  Their actions and/or inactions were a moving force in and had a direct causal link to the injuries sustained by Mr. Shinneman at the hands of Defendants Banks, Bellamy, Cundiff, Kuncle, Lane, Mendelsohn, Monday, Schmidt, and Vise.

161.   As a direct and proximate result of Defendant MCSO's negligence, Mr. Shinneman suffered serious actual physical and emotional injuries, suffered and will continue to suffer from pain, mental anguish and distress, and was caused economic damages,

including but not limited to expenses for hospital and other medical care, as well as expenses for future medical care.

**Cause of Action IX**
**Negligence**
**As to Defendant Wellpath**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 161 of this Complaint, as if those statements were fully articulated within this cause of action.

162. At all times relevant, Defendant Wellpath was contracted by the Marion County Jail to provide medical services at that facility.

163. At all times relevant Defendant Wellpath employed Defendant Vise to provide medical services at the Marion County Jail.

164. Defendant Wellpath owed a duty to Mr. Shinneman to staff the facility with competent medical personnel with the ordinary skill and knowledge to provide medical services.

165. As set forth above, the medical care and treatment provided to Mr. Shinneman was negligent and below the appropriate standard of care.

166. Defendant Wellpath is liable to Mr. Shinneman for its failure to properly monitor and supervise its employees.

**Cause of Action X**
**Negligence**
**As to Defendants Banks, Bellamy, Cundiff,**
**Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 166 of this Complaint, as if those statements were fully articulated within this cause of action.

167.   Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise were negligent and breached their duty of care, by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure to follow best practice policies and/or procedures promulgated and implemented by MCSO specifically establishing a duty to exercise reasonable care to preserve the life, health and safety of an arrestee/detainee in their care, custody and control of MCSO.

168.   Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise were negligent and breached their duty of care to Mr. Shinneman by, among other things, failing to comply with all applicable laws, statutes, regulations, training, law enforcement standards, special and general orders with regard to the use of force in their treatment and actions toward arrestees/detainees, and particularly Mr. Shinneman.

169.   Defendant Monday was negligent by his following of policies and/or procedures that were not best practices, or in the alternative, was negligent by his failure to follow best practice policies and/or procedures implemented by MCSO as to the arrest and transport of an individual.

170.   Defendant Monday was negligent by his following of policies and/or procedures that were not best practices, or in the alternative, was negligent by his failure to follow best practice policies and/or procedures as they relate to identifying when an emergency transport is necessary to preserve the life, health and safety of a person in their custody and control.

171.   Defendant Monday was negligent by his following of policies and/or procedures that were not best practices, or in the alternative, was negligent by his failure to follow best practice policies and/or procedures implemented by MCSO as to the transport of an

individual, including but not limited to, dealing with the securing of individuals being transported to the Marion County Jail utilizing MCSO jail wagons.

172.   Defendant Monday's actions and/or inactions, as described herein, were objectively unreasonable in light of the facts and circumstances confronting him.  Specifically, but not exclusively, after recognizing that Mr. Shinneman was in a highly intoxicated state, Defendant Monday failed and/or refused to contact EMS to take him to the hospital, he failed and/or refused to secure Mr. Shinneman in the transport van.

173.   Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise were negligent by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure follow best practice policies and/or procedures regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee.

174.   By virtue of Defendant Vise's position at the Marion County Jail, she owed a duty to Mr. Shinneman to exercise ordinary skill and knowledge in providing medical services.

175.   Defendant Vise, as a nurse acting in her personal capacity, was negligent in that the care she provided to Mr. Shinneman fell below the acceptable standard of care.

176.   Defendant Vise, acting in her official and personal capacities, was negligent by her following of policies and/or procedures that were not best practices, or in the alternative, was negligent by her failure follow best practice policies and/or procedures in place to protect the safety and welfare of inmates in the Marion County Jail.

177.   Defendant Vise was negligent for her failure to provide timely and adequate health care to Mr. Shinneman for an evident serious medical condition.

178. Currently unknown MCSO deputies were negligent by their following of policies and/or procedures that were not best practices, or in the alternative, were negligent by their failure to follow best practice policies and/or procedures implemented by the MCSO regarding intake of arrested individuals, including but not limited to, assessing whether the arrestee exhibits a serious medical condition and the handling of an arrestee/detainee.

179. Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise had a duty to not conduct themselves in any way which may be construed as immoral, indecent, and/or unprofessional.

180. Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise breached the duties owed to Mr. Shinneman, with such breach being the direct and proximate cause of Mr. Shinneman's quadriplegia.

181. As a direct and proximate result of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and Vise's negligence, Mr. Shinneman suffered serious actual physical and emotional injuries, suffered and will continue to suffer from pain, mental anguish and distress, and was caused economic damages, including but not limited to expenses for hospital and other medical care, as well as expenses for future medical care.

**Cause of Action XI**
**Assault and Battery**
**As to IMPD Defendants Brink, Brown, Linares, and Smith, and**
**MCSO Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday,**
**Schmidt, and other unknown MCSO deputies**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 181 of this Complaint, as if those statements were fully articulated within this cause of action.

182.   The elements of a claim of battery are met when the defendant:

      a.   acts intending to cause a harmful or offensive contact with the person of the other or third person, or an imminent apprehension of such contact, and

      b.   a harmful contact with the person of the other directly or indirectly results.

183.   IMPD Defendants, Brink, Brown, Linares, and Smith, along with MCSO Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies committed battery against Mr. Shinneman proximately causing his injuries, including his quadriplegia.

184.   As set forth above, upon information and belief, IMPD officers and Defendant Monday tossed Mr. Shinneman into the MCSO wagon.

185.   Defendant Monday's giving Mr. Shinneman a "rough ride" as he transported Mr. Shinneman to the Marion County Jail, all while Mr. Shinneman was cuffed behind his back and unable to stabilize himself, was intended to soften up Mr. Shinneman whom he identified as a "resister."

186.   Defendant Monday engaged in harmful and offensive contact with Mr. Shinneman by giving Mr. Shinneman a rough ride which he knew or should have known would cause Mr. Shinneman physical harm.

187.   Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies' rough and aggressive manhandling of Mr. Shinneman, who was clearly suffering from a serious medical trauma, to-wit:  a broken neck, caused Mr. Shinneman severe bodily pain resulting in irreversible quadriplegia.

188.   The actions of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies were the direct cause of the injuries described above, specifically Mr. Shinneman's broken neck and quadriplegic

state.  Mr. Shinneman is entitled to special damages which include pain and suffering, future pain and suffering, punitive damages and emotional trauma.

189.    It is reasonably believed that the intentional and malicious actions of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies caused Mr. Shinneman severe bodily pain.  Mr. Shinneman is entitled to punitive damages and special damages, including pain and suffering, and emotional trauma.

**Cause of Action XII**
**Intentional Infliction of Emotional Distress**
**As to Defendants Banks, Bellamy, Cundiff, Knucle,**
**Lane, Mendelsohn, Monday, Schmidt,**
**and other unknown MCSO deputies**

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 189 of this Complaint, as if those statements were fully articulated within this cause of action.

190.    The elements of a claim of intentional infliction of emotional distress are met when the defendant:

    a.    engages in "extreme and outrageous" conduct that
    b.    intentionally or recklessly
    c.    causes
    d.    severe emotional distress to another.

191.    Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies committed the tort of intentional infliction of emotional distress against Mr. Shinneman proximately causing his damages.

192.    Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies were engaged in the extreme and outrageous act of

assaulting and battering Mr. Shinneman with intentional and/or reckless disregard of his rights, health and safety.

193.    As a result of Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies' intentional and/or reckless acts, Mr. Shinneman suffered and continues to suffer severe emotional distress.

194.    Mr. Shinneman is therefore entitled to monetary damages to compensate him for his emotional injury.

195.    Mr. Shinneman is further entitled to an award of punitive damages to punish Defendants Banks, Bellamy, Cundiff, Knucle, Lane, Mendelsohn, Monday, Schmidt, and other unknown MCSO deputies for their willful and malicious and/or reckless misconduct toward him.

### Cause of Action XIII
### Declaratory Relief

Mr. Shinneman re-asserts, re-alleges, and incorporates by reference the statements contained in paragraphs 1 through 195 of this Complaint, as if those statements were fully articulated within this cause of action.

196.    A court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

197.    Mr. Shinneman seeks the Court to declare that he has been harmed by the Defendant Council through its employees, by their use of excessive force.

198.    Mr. Shinneman seeks the Court to declare that Defendants Council and MCSO, by and through their employees, violated his rights under the Fourth, Eighth, and Fourteenth Amendments to body integrity, to be free from cruel and unusual punishment and use of excessive force by law enforcement by its failure or refusal to promulgate, implement,

maintain, enforce and/or follow best practice policies and procedures intended to prevent the use of excessive force.

199.   Mr. Shinneman seeks the Court to declare that Defendant Monday, acting in his official and personal capacities, violated his rights under the Fourth, Eighth and Fourteenth Amendments to body integrity, to be free from cruel and unusual punishment and use of excessive force by law enforcement by his failure and/or refusal to follow best practice policies and/or procedures designed regarding the use of force when engaging with arrestees.

200.   Mr. Shinneman seeks the Court to declare that Defendants Council and MCSO, by and through their employees acting in their official capacities were negligent in its failure to promulgate, implement, maintain and enforce sufficient best practice policies, procedures and/or training of their employees in the use of force when engaging with arrestees and/or detainees.

201.   Mr. Shinneman seeks the Court to declare that Defendant Monday, acting in his official and personal capacities, was negligent by failing to follow best practice policies and/or procedures designed to provide guidance in the use of force when dealing with arrestees and/or detainees.

## VII.   GENERAL CAUSATION AND DAMAGES

202.   As a direct and proximate result of the foregoing Causes of Action, Mr. Shinneman has suffered and continues to suffer irreparable injuries relating to losses of income, property, and wealth and injury to physical and emotional health and general well-being.

203.    As a direct and proximate result of the foregoing counts, Mr. Shinneman has suffered

damages as stated herein, in an amount to be proven at trial, plus an appropriate amount

for his emotional pain and suffering, and punitive damages to be determined.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Travis Shinneman, prays this Court grant relief against the

named Defendants under his claims as asserted above in the following manner including but not

limited to:

a.    An award of full, fair and adequate compensation for all injuries, damages and

losses sustained and for costs herein laid out and expended;

b.    An award of punitive damages in an amount sufficient to deter Defendants from

the conduct complained of herein;

c.    Declaratory relief as sought herein;

d.    An award of reasonable attorney's fees incurred as a result of this litigation;

e.    Pre and Post Judgment interest, and

f.    For all other necessary and proper relief in the premises.

## IX.    DEMAND FOR JURY

Comes now Plaintiff, Travis Shinneman, by and through the undersigned counsel, and

respectfully requests a trial by jury as to all claims asserted herein.

Dated:  August 8, 2021

Respectfully Submitted,

_____ */s/J. Clayton Culotta*
J. Clayton Culotta, #26733-11
Jennifer H. Culotta, #26741-11
815 E. Market Street
New Albany, IN 47150
Telephone No. (812) 941-8886
Facsimile No. (812) 941-8883
clay@culottalaw.com
jennifer@culottalaw.com