UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRAVIS SHINNEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:21-cv-02203-JMS-TAB |
| ) | |
| INDIANAPOLIS-MARION COUNTY CITY- ) | |
| COUNTY COUNCIL, et al. ) | |
| ) | |
| Defendants. ) | |

**Order on City Defendants' Motion for Judgment on the Pleadings**

The plaintiff Travis Shinneman alleges that Indianapolis Metropolitan Police Department (IMPD) Officers Theodore Brink, Joshua Brown, Brian Linares, and Terry Smith violated his constitutional rights when they either failed to intervene or participated in throwing him headfirst into a Marion County Sheriff's Office (MCSO) van while he was handcuffed and allowed him to be transported without a seatbelt or other safety restraints resulting in severe injuries. He also alleges that the Indianapolis-Marion County City-County Council's (Council) policy requiring IMPD to use MCSO to transport detainees despite the lack of seatbelts in the transport vehicles was the moving force behind his injuries. The Council and the four IMPD officers (City Defendants) have moved for judgment on the pleadings. For the reasons below, the motion is **granted in part and denied in part**.

I.      **Factual Background and Procedural History**

In deciding the motion, the Court accepts as true Mr. Shinneman's account of how he was treated while in the custody of IMPD and MCSO. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). He alleges that on September 8, 2019, defendants Officers Brink, Brown, Linares, and Smith arrested him for disorderly conduct and public intoxication because he had been walking

in the street and yelling. Pursuant to policy, the officers requested MCSO to transport Mr. Shinneman to the Marion County Jail. MCSO Deputy Monday arrived on the scene and became frustrated with Mr. Shinneman's difficulty entering the back of the van. Deputy Monday and another unknown officer, presumably one of the four IMPD defendants, tossed a hand-cuffed Mr. Shinneman headfirst into the back of the van. Deputy Monday transported him without a seatbelt or other safety restraint. When Mr. Shinneman arrived at the Marion County Jail, he was assaulted by several deputies and transported by ambulance to Eskenazi Hospital where was diagnosed as a quadriplegic. Dkt. 63.

## II.     Legal Standard

The City Defendants have moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. A motion for judgment on the pleadings is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss, *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016), so the Court reviews the pending motion under the Rule 12(b)(6) standard.

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true" but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim." *McCauley*, 671 F.3d at 616.

## III.     Discussion

Mr. Shinneman does not object to the dismissal of the following claims: official-capacity claims against Officers Brink, Brown, Linares, and Smith (dkt. 76 at 13); state law claims against

2

the Council (*id*. at 20-21); and state law claims against the four Officers (*id*. at 20). Mr. Shinneman asks that the state law claims against the officers be dismissed without prejudice so that he may move to amend his complaint if he discovers that their actions were outside the scope of their employment. *Id*. Because Mr. Shinneman does not object to the dismissal of these claims, the City Defendants' motion to dismiss them is **granted**.

This leaves two sets of claims against the City Defendants: Fourth Amendment claims against the four officers and a *Monell* policy claim against the Council. Mr. Shinneman's basis for these claims is that the Council maintained a policy of delegating the transport of detainees to MCSO despite knowing that MCSO transport vehicles lacked seatbelts or other safety restraints. He asserts that the Council's policy, and the four officers' adherence to that policy, resulted in him being transported without a seatbelt and being rendered a quadriplegic.

### A.  Fourth Amendment Claims Against IMPD Officers

#### 1.  Plausible Claim for Relief

Mr. Shinneman claims that defendant Officers Brink, Brown, Linares, and Smith violated his rights when they failed to arrange other transport for him when they realized he was intoxicated and was going to be transported without a seatbelt in the MCSO van. Dkt. 63 at 22, ¶ 114. He also alleges that two individuals grabbed him on either side and tossed him headfirst into the van while he was handcuffed. *Id*. at 6, ¶ 31. Although he does not know who tossed him into the van, Deputy Monday was the only non-IMPD officer present, so presumably one of the IMPD officers assisted him. At the least, the Court can infer from the amended complaint that Mr. Shinneman alleges that the other officers failed to stop the two individuals from tossing him into the van.

Because Mr. Shinneman was a pretrial detainee who had not yet had a probable cause hearing, the Court applies the Fourth Amendments' objective unreasonableness standard. *Estate of*

*Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017). An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that other officers were committing a constitutional violation and he had a realistic opportunity to prevent the harm. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Mr. Shinneman's allegations that one of the four IMPD officers participated in tossing him headfirst into the MCSO van while he was handcuffed, and that the remaining officers failed to intervene, state a viable Fourth Amendment claim. A reasonable jury could conclude that it was objectively unreasonable to either participate or fail to intervene in this conduct.

It is less clear whether Mr. Shinneman's allegations that the IMPD officers failed to protect him from being transported without a seatbelt state a viable Fourth Amendment claim. In *Dale v. Agresta*, in the context of a qualified immunity defense to an Eighth Amendment deliberate indifference claim regarding failure to seatbelt a convicted prisoner, the Seventh Circuit held that a convicted inmate did not have a clearly established right to a seatbelt during transport under the Eighth Amendment. 771 F. App'x 659, 661 (7th Cir. 2019). Because Mr. Shinneman's claims are governed by the Fourth Amendment's objective reasonableness standard, *Dale* does not foreclose a Fourth Amendment violation when an officer fails to seatbelt an arrestee. The Court need not decide whether to extend *Dale*'s reasoning to the Fourth Amendment context, because the individual officers are protected by qualified immunity as to these claims.

### 2. Qualified Immunity

"A state official is protected by qualified immunity unless the plaintiff shows: (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (internal

4

quotations and citations omitted). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Id.* (quoting *Green v. Newport*, 868 F.3d 629 (7th Cir. 2017)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not dismissed under [Rule 12] on qualified immunity grounds.'" *Id.* at 548 (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)).

Mr. Shinneman had a clearly established Fourth Amendment right not to be tossed into a van headfirst while handcuffed. *Titran v. Ackman*, 893 F.2d 145, 148 (7th Cir. 1990) ("If the officers intentionally restrained, jolted, and roughed up Titran without physical provocation from her, their behavior was unreasonable."); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Facts may be developed during discovery that alter this determination, but at this stage, the IMPD officers are not entitled to qualified immunity on Mr. Shinneman's excessive force or failure-to-protect claims. *See Reed*, 906 F.3d at 553 ("[A]lthough qualified immunity defenses should be decided at 'the earliest possible stage in litigation,' *Hunter v. Bryant*, 502 U.S. 224, 227 (1991), the determination whether qualified immunity exists for Palmer depends on 'particular facts' that are not yet in the record.").

On the other hand, an arrestee's right to a seatbelt was not clearly established in September 2019. In *Dale*, the Seventh Circuit observed: "Neither the Supreme Court nor this court has ruled that transporting an inmate without a seatbelt creates an intolerable risk of harm." 771 F. App'x at 661. *Dale* was decided a mere three months before Mr. Shinneman's arrest. *Dale* involved a convicted inmate and the more rigorous Eighth Amendment standard. But absent a Fourth Amendment case to the contrary, a reasonable officer could conclude from *Dale* that the transport

5

of an inmate without a seatbelt was not objectively unreasonable. Officers Brink, Brown, Linares, and Smith are entitled to qualified immunity on Mr. Shinneman's seatbelt claim.

### B. *Monell* Policy Claim Against the Council

Mr. Shinneman raises a claim against the Council under 42 U.S.C. § 1983 based on their implementation of a policy requiring arrestees to be transported by MCSO, knowing MCSO transport vehicles lacked seatbelts, and also based on the Council's alleged failure to train officers in how to handle intoxicated arrestees. While municipalities and entities that contract with municipalities can be held liable under section 1983, they cannot be held liable under a *respondeat superior* theory of liability. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Rather, to be liable under section 1983, the entity must have caused the deprivation of the plaintiff's federally secured rights "through its written policies, widespread practices or customs, and the acts of a final decisionmaker." *Levy v. Marion Cty. Sheriff*, 940 F.3d 1002, 1010 (7th Cir. 2019) (citing *Bd. of the Cty. Commissioners v. Brown*, 520 U.S. 397, 403–04 (1997)).

As discussed above, while *Dale* held that it was not clearly established that convicted inmates had a right to a seatbelt during transport, the court left the door open to the possibility of such a right existing and supporting a *Monell* claim:

> The department may be liable under § 1983 if its official policy or custom violates a plaintiff's constitutional rights. Even if we assumed that the lack of seatbelt violated Dale's Eighth Amendment rights, Dale has not produced evidence that the sheriff's department did not provide seatbelts as a matter of policy.

771 F. App'x. at 661 (cleaned up).

Here, Mr. Shinneman claims that the Council maintained a policy of using MCSO for the transport of arrestees (IMPD General Order 8.1(I)(F), that the Order did not give IMPD officers discretion to consider transport alternatives, that the Council knew MCSO transport vehicles lacked seatbelts or other restraints, and that this policy directly led to his injuries. Dkt. 63 at 5, ¶ 26;

14, ¶ 81; 16, ¶91; 18, ¶ 96. These allegations give the Council fair notice and state a plausible *Monell* claim.

In contrast, Mr. Shinneman's failure to train claim lacks sufficient factual allegations to state a plausible claim. "A municipality can be held liable under a theory of failure to train if it has actual knowledge of a pattern of criminally reckless conduct and there is an obvious need to provide training to avert harm, even if the prior acts have yet to result in tragedy*." Flores v. City of S. Bend*, 997 F.3d 725, 733 (7th Cir. 2021) (citations omitted). Mr. Shinneman alleges only that the Council failed to train officers on the transport and emergency transport of individuals. Dkt. 63 at 18, ¶¶ 96-97. His response in opposition to the City Defendants' motion suggests that the failure of the IMPD officers to prevent Mr. Shinneman from being transported without a seatbelt "is a clear indication that there was a failure to train the officers on the proper recognition and handling of intoxicated arrestees." Dkt. 76 at 19. Mr. Shinneman does not allege that the Council had actual knowledge of a pattern of deliberate indifference or criminally reckless conduct related to the transport of arrestees. And given the discussion in *Dale* regarding the lack of obvious risk associated with transporting individuals without a seatbelt, it cannot be inferred from Mr. Shinneman's allegations that there was an "obvious need to provide training" on transporting arrestees "to avert harm". *Flores*, 997 F.3d at 733. Therefore, Mr. Shinneman's failure to train claim against the Council is **dismissed**.

### IV.   Conclusion

In summary, the City Defendants' second motion for judgment on the pleadings, dkt. [72], is **granted in part and denied in part**. The motion is **granted to the extent** that Mr. Shinneman's state law claims against the Council and his official capacity and state law claims against Officers Brink, Brown, Linares, and Smith are **dismissed**. His Fourth Amendment claims against Officers

7

Brink, Brown, Linares, and Smith for not intervening when he was transported without a seatbelt are **dismissed** because the Officers are entitled to qualified immunity. Finally, his failure to train claim against the Council is **dismissed**. No partial final judgment shall issue at this time.

The City Defendants' motion is **denied to the extent** that the following claims against them remain:

- Fourth Amendment excessive force and failure to protect claims against Officers Brink, Brown, Linares, and Smith based on Mr. Shinneman's allegation that two of the officers present threw him headfirst into the van while he was handcuffed; and

- A *Monell* policy claim against the Council.

**IT IS SO ORDERED.**

Date: 8/1/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Jennifer H. Culotta
CULOTTA & CULOTTA LLP
jennifer@culottalaw.com

J. Clayton Culotta
CULOTTA & CULOTTA LLP
clay@culottalaw.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,  LLP
ard@rkblegalgroup.com

Christopher Andrew Farrington
BLEEKE DILLON CRANDALL ATTORNEYS
drew@bleekedilloncrandall.com

Amy Stewart Johnson
FROST BROWN TODD LLC (Indianapolis)
asjohnson@fbtlaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,  LLP
jfk@rkblegalgroup.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT,  LLP
ejm@rkblegalgroup.com

Anthony W. Overholt
FROST BROWN TODD LLC (Indianapolis)
aoverholt@fbtlaw.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
awillfon@travelers.com