UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRAVIS SHINNEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02203-JMS-TAB |
| | ) | |
| INDIANAPOLIS-MARION COUNTY CITY-COUNTY COUNCIL, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Travis Shinneman alleges in this civil action that Marion County Sheriff's Office (MSCO) Deputy Steve Monday violated his constitutional rights when Deputy Monday threw him into a Marion County Sheriff's Office (MCSO) van while he was handcuffed and gave him a "rough ride" to the Marion County Jail, resulting in Mr. Shinneman's permanent paralysis. Mr. Shinneman also alleges that Deputies Kunkel and Schmidt used excessive force against him once he arrived at the Jail and that MSCO's unconstitutional policies and practices of lawlessness and transporting arrestees in unsafe conditions were the moving force behind his injuries.

The MSCO defendants have filed a motion for summary judgment. Dkt. [113]. Mr. Shinneman has moved for partial summary judgment as to the MSCO defendants' liability for his injuries. Dkt. [127]. For the reasons below, Mr. Shinneman's motion for partial summary judgment, dkt. [127], is **DENIED**. The MSCO defendants' motion for summary judgment, dkt. [113], is **GRANTED** as to Mr. Shinneman's policy claims against MSCO and **DENIED** as to his claims against the MSCO Deputy Defendants.

# I.
# Standard of Review

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

2

**II.**
**Factual Background**

Because the MSCO Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Defendant MSCO maintains policies regarding the transport of and use of force against detainees. Dkt. 114-10. As part of an agreement with the Indianapolis Metropolitan Police Department (IMPD), MSCO Deputies transport all IMPD arrestees to the Marion County Jail. Dkt. 128-4 at 3.

On September 8, 2019, four IMPD Officers arrested Mr. Shinneman for public intoxication, disorderly conduct, and resisting arrest. Smith Affidavit, dkt. 114-4 at 1-2. Deputy Monday was sent to the scene to transport Mr. Shinneman to jail. Monday Affidavit, dkt. 114-3 at 1. Deputy Monday observed that Mr. Shinneman had abrasions on his head and knees, but did not think that either his level of intoxication or the abrasions warranted a medical transport. *Id*. at 5, 8. Deputy Monday removed the IMPD handcuffs from Mr. Shinneman and applied his own set of handcuffs behind Mr. Shinneman's back. *Id*. Then Deputy Monday and IMPD Officer Smith stood on either side of Mr. Shinneman and attempted to put him in the van through the rear door. *Id*. at 3.

Deputy Monday's version of events is that, after Mr. Shinneman resisted getting into the van for some time, Deputy Monday allowed him to sit on the bumper and roll himself backward into the van. *Id*. at 5, 8. When Mr. Shinneman did not complete the backward roll, Deputy Monday pushed Mr. Shinneman's legs into the van and then "reached in and grabbed him by the shoulders and lifted him up to straighten him out," so that Mr. Shinneman was on his stomach. *Id*. at 5, 8,

23. Deputy Monday allowed Mr. Shinneman to ride to the Jail lying on his stomach on the floor instead of sitting on the bench. *Id*. at 4. IMPD Officer Brink stated that it was against policy to transport arrestees in this position. Brink Oral Statement, dkt. 128 at 30 (transcript page 28) (describing how he saw Deputy Monday place Mr. Shinneman in the van and stating that "he is not going to be laying face down in the wagon because we all know you're going to [potentially have positional asphyxia]. And that's their policy, you're not going to put him face down in the wagon because of that."); MSCO Policy, dkt. 128-5 at 11.

Although Mr. Shinneman no longer has any memory of the events, he reported shortly after the incident that two officers threw him into the van while he was handcuffed. Dkt. 128-24 at 6. The IMPD officers offer additional conflicting versions of what happened. Officers Brown and Brink testified that they observed Deputy Monday push Mr. Shinneman into the van on his stomach. Dkt. 114-5; dkt. 114-6. None of the IMPD officers saw Mr. Shinneman attempt a backward roll into the van.

Deputy Monday transported Mr. Shinneman without a seatbelt or other safety device. Although the van was equipped with safety loop straps behind the benches for arrestees to grab, Mr. Shinneman could not make use of this safety device with his hands cuffed behind his back and lying on the floor on his stomach. Hubert Affidavit, dkt. 114-13 at 2, 5. Deputy Monday and IMPD Officer Brown attest that Deputy Monday drove normally to the Jail. Brown Affidavit, dkt. 114-6 at 4, 18-19; dkt. 114-3 at 3.

When Mr. Shinneman arrived at the Marion County Jail, he was unable to stand. But because Deputy Monday had seen Mr. Shinneman walking at the scene, he assumed that Mr. Shinneman was just being uncooperative. Dkt. 114-3 at 4. Deputies Monday, Banks, Kunkel, and Schmidt carried Mr. Shinneman from the van by his arms and legs and laid him on the ground.

*Id.* at 5, 9. When Mr. Shinneman would not stand to be searched (because he could not stand), Deputies Kunkel, Banks, and Bowen lifted him up to a standing position. Kunkel Affidavit, dkt. 114-16 at 3.[1]

Mr. Shinneman was later transported by ambulance to Eskenazi Hospital where was diagnosed as a quadriplegic due to a broken neck. The key question in this case is how and when Mr. Shinneman sustained his catastrophic injury. An internal affairs investigation concluded that there was insufficient evidence that Deputy Monday violated any MSCO rule or regulation. Roney Affidavit, dkt. 114-12 at 2-3, 10.

The parties' experts differ in their conclusions about how Mr. Shinneman could have received his injury. MSCO's biomechanical expert, Dr. Gwin, concluded that Mr. Shinneman sustained his injury when he was part-way through a backward roll and Deputy Monday pushed on his legs. Dkt. 128-3 at 7.

Mr. Shinneman's biomechanical expert, Dr. Van Ee, described Mr. Shinneman's injury—a C6-C7 bilateral facet dislocation—as an injury that occurs when a body in motion, at least approximately seven miles per hour, comes to an abrupt stop in a piledriver fashion where the "head hits something and stops and the torso keeps going and compresses the neck." Excerpts of Dr. Van Ee Deposition, dkt. 128-2 at 59. Another way to visualize the injury is a person being picked up by their ankles, raised 20 inches off the ground, and dropped on their head. *Id.* at 41.

Dr. Van Ee testified at his deposition that Mr. Shinneman sustained his injury either while being placed in the van or on the way to the jail. *Id.* at 56. Deputy Monday could have caused the

---

[1] Some of the events at the Jail were preserved on video. Dkt. 128-20.

injury if he shoved Mr. Shinneman into the van at a rate of seven miles per hour or stopped or accelerated the van abruptly on the way to the Jail. *Id*. at 42-43; 56-57.

### III.
### Discussion

**A. Fourth Amendment claims against Deputies Monday, Kunkel, and Schmidt**

Because Mr. Shinneman was a pretrial detainee who had not yet had a probable cause hearing, the Court applies the Fourth Amendment's objective unreasonableness standard to his claim that the MSCO deputies used excessive force against him and disregarded his health and safety. *Estate of Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017). An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that other officers were committing a constitutional violation and he had a realistic opportunity to prevent the harm. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

Deputy Monday acknowledges disputes of fact preclude summary judgment on Mr. Shinneman's excessive force claim against him. Dkt. 137 at 2. Deputies Kunkel and Schmidt contend that their handling of Mr. Shinneman was objectively reasonable. A reasonable juror could conclude that the video evidence demonstrates that Deputy Kunkel's search of Mr. Shinneman, which involved forcefully lifting him from a wheelchair to a standing-like position against a wall, while Officer Schmidt looked on, was objectively unreasonable. A reasonable jury viewing the video could conclude that Mr. Shinneman was completely incapable of moving his body from the neck down due to injury. And a reasonable jury could find that the officers' use of force against Mr. Shinneman in that condition was objectively unreasonable and created an unreasonable risk to Mr. Shinneman's health and safety. Thus, MSCO Deputies Monday, Kunkel, and Schmidt are not entitled to summary judgment.

**B. Qualified Immunity**

Deputies Kunkel and Schmidt argue that they are entitled to judgment as a matter of law based on qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11−12 (2015) (cleaned up). Courts cannot define "clearly established law at a high level of generality" but rather must assess "whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). The doctrine of qualified immunity "gives government

officials breathing room to make reasonable but mistaken judgments[.]" *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

Deputies Kunkel and Schmidt argue that they are entitled to qualified immunity because they had no idea Mr. Shinneman was paralyzed when they interacted with him at the Jail. Mr. Shinneman responds that the deputies' behavior toward Mr. Shinneman was inhumane and that reasonable deputies would have realized that Mr. Shinneman was experiencing a medical emergency. While the Court recognizes that a fact-finder must consider the reasonableness of the deputies' actions in the context of the circumstances known to them at the time, a reasonable juror could conclude that the deputies' actions were objectively unreasonable. So again, because questions of fact remain as to whether the actions of Deputy Kunkel and Schmidt violated Mr. Shinneman's rights, they are not entitled to summary judgment. *Isby*, 856 F.3d at 530.

### C. *Monell* policy claim against MSCO

Plaintiffs may sue municipalities alleging that the defendant's unconstitutional policy, practice, or custom caused a constitutional injury. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690−91 (1978). To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

MSCO contends that it is entitled to summary judgment on Mr. Shinneman's *Monell* claim because Mr. Shinneman has not identified a policy or widespread practice that was the moving force behind his injury. Mr. Shinneman responds that the video evidence shows that numerous deputies are laughing and joking as a motionless Mr. Shinneman is carried by his limbs and hoisted

against a wall to be searched. He contends that reasonable jurors could conclude from this evidence that MSCO condoned or encouraged a widespread culture of lawlessness. Dkt. 131 at 42.  He also contends that MSCO's policy of allowing the transport or arrestees without seatbelts or other safety restraints is unconstitutional. *Id*. at 42-43.

To succeed on his claim that MSCO maintains a culture of lawlessness, Mr. Shinneman must introduce evidence of a pattern of similar violations or demonstrate that the risk of such violations is "patently obvious." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 237 (7th Cir. 2021). He has failed to do either.

He has also failed to create a dispute of material fact as to his claim that MSCO's policy of transporting arrestees without seatbelts is unconstitutional. First, as discussed earlier, a mere three months before Mr. Shinneman's arrest the Seventh Circuit noted that neither it nor the Supreme Court had ruled that transporting a convicted inmate without a seatbelt violated the Constitution. *Dale*, 771 F. App'x at 661. Second, the undisputed evidence is that MSCO had a policy against transporting arrestees on their stomachs in the back of a van where they could not access the available safety holds and requiring ambulance transport when arrestees were unable to stand or were acutely intoxicated, or anytime a deputy felt medical assistance was appropriate. Dkt. 128-5 at 5, 7-8.  Mr. Shinneman has not provided evidence that MSCO's transport policies were unconstitutional or were the moving force behind his injuries. Instead, the evidence supports, at most, a claim that Deputy Monday's failure to follow MSCO policies led to Mr. Shinneman's injuries. Therefore, MSCO is entitled to judgment as a matter of law.

### D. State Law Claims Against MSCO and Deputy Monday

In its reply brief, MSCO acknowledges that Mr. Shinneman's state law claims of negligence and assault and battery against it shall proceed to trial. Dkt. 137 at 17. However, Deputy Monday

asserts that he is entitled to summary judgment on the same claims because (1) Mr. Shinneman was contributorily negligent by refusing to get into the van properly and choosing to ride on the floor of the van, (2) Deputy Monday is entitled to immunity under Indiana's Tort Claims Act and common law immunity, and (3) Mr. Shinneman's assault and battery claims must fail because Deputy Monday did not use excessive force against him. Dkt. 116 at 30-35.[2]

First, the Court did not grant Deputy Monday summary judgment on Mr. Shinneman's excessive force claim and Deputy Monday acknowledged in his reply that the excessive force claim against him shall proceed to trial. Dkt. 137 at 17. Second, as Deputy Monday acknowledges, contributory negligence is usually a question of fact for the jury. There are sufficient factual disputes regarding Mr. Shinneman's behavior to preclude summary judgment on this ground. For example, Deputy Monday relies in part on his contention that Mr. Shinneman did a backward roll into the van. But neither Mr. Shinneman nor the IMPD Officer Defendants agree that Mr. Shinneman attempted such a maneuver.

Finally, Deputy Monday is not entitled to summary judgment based on the Indiana Tort Claims Act. This statute provides that "a plaintiff may not maintain an action against a governmental employee personally if that employee was acting within the scope of his or her employment." Ind. Code § 34-13-3-5(b). A government employee is not immune if the alleged tortious act or omission was: 1) criminal; 2) clearly outside the scope of employment; 3) malicious; 4) willful and wanton; or 5) calculated to benefit the employee personally. Ind. Code § 34-13-3-5(c). For purposes of this statue, "scope of employment" has been defined as actions by "an

---

[2] In his brief supporting his motion to amend his complaint, Mr. Shinneman stated that he was not pursuing any state law claims against the individual MSCO defendants. Dkt. 62 at 7. Nevertheless, his amended complaint raised state law claims against several individual defendants. Dkt. 63 at 37-40. The Court looks to the amended complaint itself, not the supporting motion, as the pleading that sets forth a plaintiff's claims. Mr. Shinneman now asserts that he is only pursuing individual state law claims of negligence, assault, and battery against Deputy Monday. Dkt. 44-49.

employee…if the employee acts with the intention of serving the employer's interests." *Norris by Norris v. Board of Educ. of Greenwood Comm. School Corp*., 797 F.Supp. 1452, 1459 (S.D. Ind. 1992) (internal citations omitted). The rationale behind this immunity is "to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v Smith*, 727 N.E.2d 450, 453 (Ind. 2000).

 Mr. Shinneman asserted in his complaint and amended complaint that Deputy Monday was acting "under color of law" and "within the scope of both [his] official and personal capacities." Dkt. 1 at 29; dkt. 63 at 32-33. The MSCO defendants interpreted this allegation as an allegation that Deputy Monday acted "within the scope of [his] official duties or employment" and admitted the allegation. Dkt. 38 at 47;  dkt. 79 at 49-50. Furthermore, Mr. Shinneman requested that Deputy Monday admit that he was "acting within the scope of his official capacity" during his involvement with Mr. Shinneman, and he did. Dkt. 128-15 at 3.

 Mr. Shinneman now argues that he is pursuing individual claims only against Deputy Monday based on his allegation that Deputy Monday acted maliciously, willfully, and wantonly. Dkt. 131 at 44; dkt. 63 at 37-40. Deputy Monday counters that Mr. Shinneman asked him to admit that he was acting within the scope of his "official capacity" during his interactions with Mr. Shinneman. But "official capacity" and "employment" have different legal meanings. A claim against a defendant in his official capacity usually means a claim for injunctive relief against the relevant state or state agency. *Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) ("Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity; where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity."). Although the MSCO

defendants interpreted Mr. Shinneman's inartful use of the term "within the scope of both their official and personal capacities" as an allegation that they acted within the scope of their employment, it is clear to the Court that he was attempting to sue Deputy Monday for money damages in his personal capacity and as a state actor pursuant to § 1983 and state tort law. As such, his allegations that Deputy Monday acted maliciously, willfully, and wantonly take his negligence claim outside the protective umbrella of the Indiana Tort Claims Act.

Deputy Monday cites *Savieo v. City of New Haven*, 824 N.E.2d 1272, 1277-78 (Ind. Ct. App. 2005) in support of his argument for common law immunity. In that case the defendant was immune from suit for failing to prevent a citizen from committing suicide. The Indiana Court of Appeals held that police are immune from suit when they fail to "prevent threatened suicides in *noncustodial* cases." *Id*. at 1277 (emphasis supplied). Deputy Monday has pointed to no case law supporting his contention that the common law immunizes him from liability for his alleged malicious, willful, and wanton force against Mr. Shinneman. Therefore, he is not entitled to summary judgment on the state law claims against him.

### IV.
### Mr. Shinneman's Motion for Partial Summary Judgment

Mr. Shinneman's motion for partial summary judgment asks the Court to find the MSCO defendants liable for his injuries even though disputes of fact remain as to whether the defendants were negligent or objectively unreasonable. Dkt. 131 at 17. He cites no caselaw in support of his novel argument that the Court determine liability without applying any particular standard of liability, leaving the jury to determine whether the defendants were negligent, objectively unreasonable, or both. Because his argument is undeveloped, the Court summarily denies his motion for partial summary judgment.

**V.**
**Conclusion**

The MSCO Defendants' motion for summary judgment, dkt. [113], is **GRANTED** as to

Mr. Shinneman's policy claims against MSCO and **DENIED** as to his claims against the MSCO

Deputy Defendants. No partial final judgment shall issue at this time. An excessive force claim

against Deputy Monday and state law claims against MSCO are also proceeding after the

defendants withdrew their motion for summary judgment as to these claims.

Mr. Shinneman's motion for partial summary judgment, dkt. [127], is **DENIED**.

This case is currently set for a telephonic status conference with the Magistrate Judge on

May 4, 2023, a final pretrial conference on May 25, 2023, and a jury trial on June 20, 2023. The

Magistrate Judge is requested to discuss the timing of pre-trial submissions, trial, and a settlement

conference. The Court will consider motions to continue the trial to pursue settlement.

**IT IS SO ORDERED.**

Date: 5/3/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

13