UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| TRAVIS SHINNEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-02203-JMS-TAB |
| | ) | |
| INDIANAPOLIS-MARION COUNTY CITY-COUNTY COUNCIL, et al. | ) ) ) | |
| Defendants. | ) | |

**ORDER ON CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Travis Shinneman alleges in this civil action that Indianapolis Metropolitan Police Department (IMPD) Officers Theodore Brink, Joshua Brown, Brian Linares, and Terry Smith violated his constitutional rights when they either failed to intervene or participated in throwing him headfirst into a Marion County Sheriff's Office (MCSO) van while he was handcuffed resulting in permanent paralysis. He also alleges that the Indianapolis-Marion County City-County Council's (City-County Council) policy requiring IMPD to use MCSO to transport detainees despite the lack of seatbelts in the transport vehicles was the moving force behind his injuries.

These defendants have filed a motion for summary judgment. Dkt. [117]. For the reasons below, that motion is **GRANTED** as to Mr. Shinneman's claims against the City-County Council and **DENIED** as to his claims against the IMPD Officers.

I.
**Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a

matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Factual Background

Because City Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s]

all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Defendant City-County Council is a local-government legislative body that approves the budget of the IMPD. Herget Affidavit, dkt. 117-1. IMPD is under the overall authority of the Mayor of Indianapolis, rather than the City-County Council. The City County-Council has no involvement in IMPD operations, policies, training, or general orders. *Id*. IMPD General Order 8.1(I)(F), which mandates that arrestees are transported to the Marion County Jail in MSCO vehicles rather than in IMPD vehicles, was not enacted by the City-County Council. *Id*.; dkt. 62-1.

On September 8, 2019, defendants IMPD Officers Brink, Brown, Linares, and Smith responded to calls about a disturbance at an area restaurant and found Mr. Shinneman nearby, in the street and yelling. Brown Affidavit, dkt. 114-6. The officers arrested him for public intoxication and disorderly conduct. Brink Affidavit, dkt. 114-5. Pursuant to policy, the officers requested MCSO to transport Mr. Shinneman to the Marion County Jail. *Id*.; dkt. 62-1. MCSO Deputy Monday arrived on the scene and he and Officer Smith attempted to help Mr. Shinneman into the van. Dkt. 114-5. Mr. Shinneman appeared to have difficulty entering the van or was intentionally failing to comply with Deputy Monday's orders to do so. *Id*.; dkt. 128-24 at 6.

Mr. Shinneman reported shortly after the incident that two officers threw him into the van while he was handcuffed, but all the IMPD officers deny that they assisted Deputy Monday in finally getting Mr. Shinneman in the van. Dkt. 128-24 at 6. Officer Smith testified that at one point he attempted to lift Mr. Shinneman's leg under his knee to get him into the van. But when Mr. Shinneman resisted, Officer Smith walked away to add a charge of resisting arrest to the officer arrest report. Smith Affidavit, dkt. 144-4.

Officers Brown and Brink testified that they observed Deputy Monday push Mr. Shinneman into the van on his stomach. Dkt. 114-5; dkt. 114-6. Deputy Monday transported Mr. Shinneman without a seatbelt or other safety restraint. When Mr. Shinneman arrived at the Marion County Jail, he was unable to stand. He was later transported by ambulance to Eskenazi Hospital where was diagnosed as a quadriplegic due to a broken neck. The key question in this case is how and when Mr. Shinneman sustained his catastrophic injury.

### III.
### Discussion

**A. Fourth Amendment excessive force and failure to protect claims against Officers Brink, Brown, Linares, and Smith**

Officers Brink, Brown, Linares, and Smith contend that they did not place Mr. Shinneman in Deputy Monday's transport van. Officer Smith tried to assist Deputy Monday in getting Mr. Shinneman into the van by lifting his leg under the knee onto the van's bumper. But when Mr. Shinneman resisted, Officer Smith walked away to add a resisting arrest charge to his arrest report. It was at that time that Deputy Monday pushed Mr. Shinneman into the van on Mr. Shinneman's stomach and manipulated Mr. Shinneman's body position in the van while the four IMPD Officers watched.

Mr. Shinneman contends that two officers threw him in the van. Although he now has no memory of the incident, when he was interviewed on September 11, 2019, he was asked if any IMPD officer harmed him. He replied that he did not recall whether the officers were wearing IMPD or Sheriff's Department uniforms. But he did recall that he could not get his knees up in the van so two officers—one on each side—picked him up and threw him in. Dkt. 128-24 at 6. Because Deputy Monday was the only non-IMPD officer present, Mr. Shinneman's account implicates at least one IMPD officer in the actual use of force. While Officer Smith is the most likely candidate

4

since he was the officer that tried to get Mr. Shinneman's leg or knee into the van, it does not matter at this stage which IMPD officer assisted Deputy Monday, or even that any IMPD officer physically participated in the excessive force.

Because Mr. Shinneman was a pretrial detainee who had not yet had a probable cause hearing, the Court applies the Fourth Amendments' objective unreasonableness standard. *Estate of Perry v. Wenzel*, 872 F.3d 439, 452 (7th Cir. 2017). An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know that other officers were committing a constitutional violation and he had a realistic opportunity to prevent the harm. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

The IMPD officers repeatedly state in their briefing that it is undisputed that they did not witness any unreasonable force and that it is undisputed that no one threw Mr. Shinneman into the van head-first. Dkt. 118 at 5-11, 19-20. But these are disputed material questions in this case. Mr. Shinneman told Lt. Knight that two officers (therefore at least one of the four IMPD officers) participated in throwing him into the MCSO van while he was handcuffed and intoxicated, and that the remaining officers failed to intervene. These are the facts that the IMPD officers must rely on when arguing for summary judgment, not their own statements that they observed no unreasonable use of force. The appropriate standard is an objective one. *Perry*, 872 F.3d at 452. The officers' assessment of whether the force was reasonable is not dispositive. Crediting Mr. Shinneman's version of events, a reasonable jury could conclude that the force Deputy Monday used against him was objectively unreasonable and that it was objectively unreasonable for the IMPD officers to either participate in the force or fail to intervene. Thus, IMPD Officers Brink, Brown, Linares, and Smith are not entitled to summary judgment.

### B. Qualified Immunity

The IMPD officers argue that they are entitled to judgment as a matter of law based on qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly.* 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted). "'If *either* inquiry is answered in the negative, the defendant official' is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018) (emphasis in original)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (cleaned up). Courts cannot define "clearly established law at a high level of generality" but rather must assess "whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). The doctrine of qualified immunity "gives government

officials breathing room to make reasonable but mistaken judgments[.]" *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The IMPD officers contend that they are entitled to qualified immunity because they did not violate Mr. Shinneman's constitutional rights, and if they did, there is no analogous case clearly establishing that their actions or failures to act were unconstitutional. Dkt. 118 at 21-23. In response, Mr. Shinneman points to *Adbullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005). In that case, an officer knelt on the back of a resisting arrestee, Jamal Mohamed Abdullahi, while other officers assisted or looked on. Less than three minutes after the officers took Mr. Abdullahi to the ground, he was dead. *Id*. at 765-66. His estate brought claims of excessive force and failure to protect against the officers. Two civilian witnesses testified that Mr. Abdullahi was acting aggressively and that none of the officers did anything to cause him serious injury. *Id*. at 767. The district court granted the officers qualified immunity and the Seventh Circuit reversed.

The IMPD Officers argue that *Abdullahi* is distinguishable because Mr. Shinnamen's expert stated that if someone had seen Mr. Shinneman receive his injury, they would have known that something catastrophic had happened, yet none of the witnesses saw Deputy Monday do anything unreasonable. But Mr. Shinnamen's expert acknowledged in his deposition that this particular conclusion is not based on biomechanics, but common sense:

> I don't know when the injury occurred. I think there's general agreement that it happened between him either getting put into the van and before he gets to the jail. But when it happens there, I don't know that I have any engineering analysis that can help me, given the info that we currently have.
>
> * * *
>
> So when I wrote my report, I did not have all the audio statements and so forth of the officers, and so they seemed semi consistent. . . . And based on that, if his neck was broken at that point in time and all these officers are standing there watching, my position was they would have known that. They would have seen that. They wouldn't report that this was nothing, and they probably would have called EMS.

7

> But, you know, if I take the position that we're not getting the full story, then I don't know when the injury occurs. And I don't know that that's engineering analysis at that point in time. It's just, I don't know, it's more common sense.

Plaintiff's Expert Dr. Van Ee Deposition, dkt. 117-2 at 73-74. Dr. Van Ee is a biomedical engineer. He described Mr. Shinneman's injury—a C6-C7 bilateral facet dislocation—as an injury that occurs when a body in motion, at least approximately seven miles per hour, comes to an abrupt stop in a piledriver fashion where the "head hits something and stops and the torso keeps going and compresses the neck." *Id*. at 27, 30, 67. Another way to visualize the injury is a person being picked up by their ankles, raised 20 inches off the ground, and dropped on their head. *Id*. at 84. Dr. Van Ee testified at his deposition that Mr. Shinneman sustained his injury either while being placed in the van or on the way to the jail. *Id*. at 64. And that Deputy Monday could have caused the injury if he shoved Mr. Shinneman into the van at a rate of seven miles per hour. *Id*. at 42.

Dr. Van Ee's testimony regarding his "common sense" take on the witness statements does not take this case out of the realm of *Abdullahi*. In both cases, a person suffered catastrophic injuries or death, and the evidentiary record is open to inferring that the injury was caused by the acts of a defendant and the failure of other defendants to intervene. As the Seventh Circuit stated in *Abdullahi*, the analysis for failure to intervene to stop excessive force "almost always implicate[s] questions of fact for the jury: 'Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" 423 F.3d at 774 (quoting *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 478 (7th Cir. 1997)). And "since the very nature of" the force applied "remains undetermined, one can only speculate as to how visually obvious any violation of [Mr. Shinneman]'s rights might have been." *Id.* at 775. Because questions of fact remain about the force applied to Mr. Shinneman and how it

8

would have appeared to a reasonable officer, it would be inappropriate to grant the IMPD Officers qualified immunity at summary judgment. *Isby v. Brown*, 856 F.3d 508, 530 (7th Cir. 2017) (summary judgment on the grounds of qualified immunity is not appropriate when genuine issues of fact remain as to whether the plaintiff's rights were violated).

### C. *Monell* policy claim against the City-County Council

Plaintiffs may sue municipalities alleging that the defendant's unconstitutional policy, practice, or custom caused a constitutional injury. *Monell v. Dep't of Social Services*, 436 U.S. 658, 690−91 (1978). To prevail on a *Monell* claim, "a plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

The City-County Counsel contends that it is entitled to summary judgment on Mr. Shinneman's *Monell* claim because it had nothing to do with IMPD's policy of transporting arrestees in MSCO vehicles that lacked seatbelts. Mr. Shinneman's response argues that the City-County Council acts through its agents, employees, and servants, such as Mayor Joe Hogsett who is the executive with authority to oversee IMPD. But there is no *respondeat superior* liability under § 1983. "Municipal governments cannot be held liable for damages under 42 U.S.C. § 1983 on a theory of *respondeat superior* for constitutional violations committed by their employees. They can, however, be held liable for unconstitutional municipal policies or customs." *Simpson v. Brown County*, 860 F.3d 1001, 1005-6 (7th Cir. 2017) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978)). Thus, City-County Council can only be held liable if a Council policy or practice was the moving force behind the constitutional injury. And the record is clear that the

City-County Council did not promulgate the policy Mr. Shinneman identifies as the moving force behind his injury.

Because Mr. Shinneman has failed to provide evidence the City-County Council has maintained a policy, practice, or custom that violated his constitutional rights, the City-County Council is entitled to judgment as a matter of law.

Mr. Shinneman's appears to argue that his reference to Joe Hogsett as the chief executive overseeing the city-county government and IMPD in his amended complaint should be construed under Rule 15 as raising a *Monell* claim against the Mayor. Dkt. 132 at 17-19. Mr. Shinneman's original complaint named as defendants Mayor Hogsett, the City-County Council, and several Council Members. These defendants filed a motion for partial judgment on the pleadings on the basis that Mr. Shinneman had not stated a viable policy claim against them and that it was duplicative to sue them all. But they also acknowledged that Mayor Hogsett is a policymaker for IMPD. Dkt. 47 at 12. Before the Court ruled on the motion for partial judgment on the pleadings, Mr. Shinneman moved to amend his complaint and remove Mayor Hogsett and the named Council members as defendants. Dkt. 61; dkt. 63.

Rule 15(c)'s provision allows amended pleadings to relate back to the original pleading if the correct defendant should have known they would be subject to suit absent the plaintiff's "mistake concerning the identity of the proper party." Fed. R. Civ. P. 15(c)(3)(B). But Mr. Shinneman's amended complaint did not attempt to name Mayor Hogsett as a defendant. He has not sought to amend his complaint and it is not clear that such a request would be granted at this late stage of litigation, particularly given his previous voluntary abandonment of claims against Mayor Hogsett.

## IV.
## Conclusion

The City Defendants' motion for summary judgment, dkt. [117], is **GRANTED** as to Mr. Shinneman's policy claim against the City-County Council and **DENIED** as to his claims against the IMPD Officers. No partial final judgment shall issue at this time. The **clerk is directed** to terminate the City-County Council as a defendant on the docket.

This case is currently set for a telephonic status conference with the Magistrate Judge on May 4, 2023, a final pretrial conference on May 25, 2023, and a jury trial on June 20, 2023. The Magistrate Judge is requested to set a settlement conference before trial.

**IT IS SO ORDERED.**

Date: 5/3/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Jennifer H. Culotta
CULOTTA & CULOTTA LLP
jennifer@culottalaw.com

J. Clayton Culotta
CULOTTA & CULOTTA LLP
clay@culottalaw.com

Carol A. Dillon
BLEEKE DILLON CRANDALL, P.C.
carol@bleekedilloncrandall.com

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
ard@rkblegalgroup.com

Christopher Andrew Farrington
Paganelli Law Group
drew@paganelligroup.com

Amy Stewart Johnson
Frost Brown Todd LLP
asjohnson@fbtlaw.com

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
jfk@rkblegalgroup.com

Edward J. Merchant
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS DUNCAN & MERCHANT, LLP
ejm@rkblegalgroup.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Kevin C. Schiferl
Frost Brown Todd LLP
kschiferl@fbtlaw.com

Adam Scott Willfond
OFFICE OF CORPORATION COUNSEL
awillfon@travelers.com

Magistrate Judge Tim A. Baker